IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT W. TONER,

    Plaintiff,

v.

GEICO INSURANCE COMPANY,

    Defendant.

CIVIL ACTION
NO. 17-0458

**OPINION**

**Slomsky, J.**                                                                                                                                                  July 6, 2017

## I.    INTRODUCTION

This case originates from an underinsured motorist claim submitted after a motorcycle accident. Plaintiff Robert W. Toner brings this suit against his own insurer, Defendant GEICO Insurance Company, alleging breach of contract and bad faith.

In Count I of the Complaint, Plaintiff alleges breach of contract because Defendant has not offered to pay his underinsured motorist claim. In Count II, Plaintiff alleges that Defendant acted in bad faith, in violation of 42 Pa. Cons. Stat. Ann. § 8371, by engaging in a variety of abusive claim handling practices. In response, Defendant has filed a Motion to Dismiss the Complaint in its entirety, which is now ripe for disposition.

## II.    BACKGROUND

Plaintiff Robert W. Toner is the son of Robert and Diann Toner (the "Toners"), who live in Huntingdon Valley, Pennsylvania. (Doc. No. 4-1 at ¶ 1.) Defendant GEICO Insurance Company ("GEICO") is a corporation that issues insurance policies in Pennsylvania. It has its principal place of business in Fredericksburg, Virginia. (Id. at ¶ 2.) Plaintiff's parents purchased automobile insurance from Defendant. (Id. at ¶ 3.) The policy issued was effective from

1

November 13, 2014 through May 13, 2015 and insured three vehicles: a 2008 Lexus, a 2006 BMW, and a 2015 GMC Sierra. (Id. at ¶ 4.) The underinsured motorist coverage under the policy was $300,000, and this coverage stacked for all three vehicles, resulting in a total coverage of $900,000. (Id.) Plaintiff alleges that he was insured under the GEICO policy because he was a member of the Toners' Huntingdon Valley household. (Id. at ¶ 3.)

On March 25, 2015, during the life of the policy, Plaintiff was operating a motorcycle in Palm Beach County, Florida. (Id. at ¶ 5.) He was driving westbound on Carol Avenue near the intersection of South Congress Avenue. (Id.) At the same time, Giovanni Aguilar was operating an automobile eastbound on Carol Avenue. (Id.) At the intersection, Aguilar attempted to make a left turn from Carol Avenue onto South Congress Avenue. (Id.) Aguilar cut across Plaintiff's lane of traffic and collided with Plaintiff. (Id.)

As a result of the collision, Plaintiff sustained severe injuries, including head injuries and damage to his nervous system. (Id. at ¶ 11.) The injuries have restricted Plaintiff's ability to perform the usual tasks of daily life. (Id.) Plaintiff's medical expenses have exceeded $3,000,000. (Doc. No. 5 at 2.) Aguilar was cited for his failure to yield at the intersection, and the accident occurred solely due to his negligence. (Doc. No. 4-1 at ¶ 6.) Plaintiff recovered $12,000 under Aguilar's insurance policy. (Id. at ¶ 17.)

After the accident, Plaintiff submitted an underinsured motorist claim to Defendant seeking the maximum stacked coverage amount of $900,000. (Id. at ¶¶ 21-22.) To date, Defendant has not paid Plaintiff in connection with his underinsured motorist claim. (Id. at ¶ 23.)

On January 16, 2017, Plaintiff initiated this action against Defendant in the Montgomery County Court of Common Pleas. (Id.) On January 31, 2017, Defendant removed the action to

this Court on the basis of diversity of citizenship jurisdiction.[1]  (Doc. No. 1.)  On February 8, 2017, Defendant filed a Motion to Dismiss.  (Doc. No. 3.)  Plaintiff subsequently filed a Response in Opposition.  (Doc. No. 5.)

### III.  STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

---

[1] This Court has subject matter jurisdiction under 28 U.S.C. § 1332.  Section 1332(a) states:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
>
> (1) citizens of different States.

28 U.S.C. § 1332.  Plaintiff is a citizen of either Pennsylvania or Florida.  Defendant is incorporated under the laws of Maryland and has its principal place of business in Virginia.  The amount in controversy exceeds $75,000.

3

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV. ANALYSIS

Defendant moves to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). Regarding the breach of contract claim, Defendant first argues that Plaintiff was not a resident of his parents' household and for this reason was not covered under the GEICO insurance policy. (Doc. No. 3 at ¶ 13.) Defendant also argues that the language of the insurance policy specifically excludes Plaintiff's underinsured motorist claim. (Id. at ¶ 58.) Finally, Defendant argues that Plaintiff has failed to state a plausible bad faith claim. (Id. at ¶ 74.) The Court will address each argument in turn.

### A. Plaintiff Has Plausibly Alleged a Breach of Contract Claim

### i. Plaintiff May Have Been an Insured

In Count I of the Complaint, Plaintiff raises a breach of contract claim against Defendant. Specifically, Plaintiff claims that Defendant breached the insurance contract between itself and the Toners by refusing to pay Plaintiff's underinsured motorist claim. (Doc. No. 4-1 at ¶¶ 24-30.) Plaintiff claims that he is insured under his parents' GEICO insurance policy because he is a member of their Huntingdon Valley household. (Id. at ¶ 3.) Defendant contends that Plaintiff resided in Palm Beach County, Florida at the time of the accident and should not be considered a member of the Toners' Huntingdon Valley household. (Doc. No. 3 at ¶¶ 52-55.) Viewing the facts in the light most favorable to Plaintiff, this issue cannot be resolved in favor of Defendant at this stage.

Under Pennsylvania law,[2] a breach of contract claim requires that a plaintiff establish: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

Here, Defendant does not contest that Plaintiff has pled the first and third elements of a breach of contract claim. Rather, Defendant contends that Plaintiff has failed to plead the second element—that is, a breach of duty imposed by the contract. Defendant contends that it owed no contractual duty to Plaintiff because Plaintiff cannot establish residence at the Toner household to make him an insured under the GEICO insurance policy. (Doc. No. 3 at ¶ 52.)

Establishing an individual's "residence" to determine if he is an insured under an insurance policy is a question of physical facts and presence rather than intent. See Nationwide

---

[2] In a case such as this one where subject matter jurisdiction is based upon diversity of citizenship jurisdiction, state law applies. Schmigel v. Uchal, 800 F.3d 113, 119 (3d Cir. 2015).

Mut. Ins. Co. v. Budd-Baldwin, 947 F.2d 1098, 1102 (3d Cir. 1991) (noting that residence in the context of an insurance contract implicates "a sense of belonging"); see also Traveler's Pers. Ins. Co. v. Estate of Parzych, 675 F. Supp. 2d 505, 509 (E.D. Pa. 2009) (noting that determining the residence of an insured has no intent component but rather is determined by purely physical facts). The word residence "contemplates, at a minimum, some consistent, personal contact with that person's home. Occasional, sporadic, and temporary contacts are insufficient." St. Paul Fire and Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431-32 (3d Cir. 1991). Examples of such physical, personal contacts include where one chooses to sleep and eat meals. Id.

Plaintiff argues that Defendant had a duty to him because his residence was the Toners' Huntingdon Valley household. (Doc. No. 4-1 at ¶ 3.) The GEICO policy[3] provides, in pertinent part:

---

[3] "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). Defendants have attached to the Motion to Dismiss: the Complaint, a copy of the GEICO insurance policy, a police report from Plaintiff's accident, examinations under oath of Plaintiff and his father, Plaintiff's driver's license records, a previous insurance policy of Plaintiff's, registration records for the motorcycle, and a copy of a map showing the distance between a Florida address and the scene of the accident. (Doc. No. 3.) Plaintiff argues that Defendant's reliance on the attached exhibits is improper because the Court may only consider the complaint and facts stated within it on a Motion to Dismiss. (Doc. No. 5 at ¶ 6.)

In a breach of contract claim involving an insurance policy, the insurance policy at issue may be considered because the plaintiff's claims are based on that document. See Borough of Moosic v. Darwin Nat. Assur. Co., 556 F. App'x 92, 95 (3d Cir. 2014) (holding that the district court did not err in considering an insurance policy in a motion to dismiss that was not attached to a complaint). Here, the Complaint refers to the terms of Defendant's policy and alleges that Defendant violated these terms. (Doc. No. 4-1 at ¶ 23.) Therefore, this Court will consider the GEICO insurance policy in deciding the Motion to Dismiss.

The other exhibits attached to Defendant's Motion to Dismiss, however, may not be considered at this stage. As noted, in considering a motion to dismiss, a court may consider only the complaint, matters of public record, and indisputably authentic documents that the complaint

> **1.** *Household Member* means a person residing in *your* household who is:
> (a)   *Your* spouse; or
> (b)   A *relative*; or . . .
>
> **2.**   *Insured* means:
> (a)   *You*;
> (b)   A *household member*; . . .
>
> **LOSSES WE PAY**
> Under this coverage, we will pay damages for ***bodily injury*** caused by an accident which the ***insured*** is legally entitled to recover from the owner or operator of an ***underinsured motor vehicle*** arising out of the ownership, maintenance or use of that motor vehicle.

(Doc. No. 3-2, Ex. D at 30) (emphasis in original).

Defendant contends that Plaintiff lived in Florida for eighteen months prior to the accident and established residence there. (Doc. No. 3 at ¶ 37.) To the contrary, Plaintiff states that he was visiting Florida temporarily for a drug rehabilitation program and never established a residence or a permanent home there. (Doc. No. 5 at 5.) Plaintiff agrees that he had multiple short stays in Florida for drug rehabilitation for a few years before the accident, but always

---

relies upon. Mayer, 605 F.3d at 230. The United States Court of Appeals for the Third Circuit has defined public records narrowly for the purpose of a motion to dismiss, which includes "criminal case dispositions such as convictions or mistrials, letter decisions of government agencies, and published reports of administrative bodies." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1197 (3d Cir. 1993) (internal citations omitted); see also Schmidt v. Skolas, 770 F.3d 241, 249 (3d. Cir. 2014) (applying the Pension definition of public records narrowly and refusing to consider press releases not attached to a complaint); but see Hynoski v. Columbia, 941 F. Supp. 2d 547, 556 (M.D. Pa. 2013) (holding that property transfer statements are public records subject to judicial notice for consideration on a motion to dismiss).

Like the court in Schmidt, this Court construes public records narrowly. Here, the Complaint does not reference the other exhibits attached to the Motion to Dismiss, nor does it rely upon them. Additionally, these documents are not public records that can be considered on a motion to dismiss because public records such as criminal case dispositions, letter decisions of government agencies, and published reports of administrative bodies are construed narrowly. Pension, 998 F.2d at 1197. The other exhibits do not meet the narrow definition of a public record and will not be considered at this stage.

7

returned to the Toners' Huntingdon Valley household once sober. (Id.) Plaintiff alleges that at the time of the accident he was residing in the Toner household but he was in Florida to receive further drug rehabilitation. (Id. at 5-6.)

Accepting all facts pled in the Complaint as true, Plaintiff has plausibly alleged that he was a member of the Huntingdon Valley household and therefore was covered by the GEICO insurance policy. The Complaint states that Plaintiff's residence at the time of his accident was the Toners' Huntingdon Valley household.[4] (Doc. No. 4-1 at ¶¶ 1, 3.) Although the accident occurred in Florida, Plaintiff submits that he was briefly visiting Florida and lived at the Toner household.

The mere fact that the accident occurred in Florida is insufficient to show that Plaintiff's residence was not at the Huntingdon Valley household. Construing the facts pled in the light most favorable to Plaintiff, it is plausible that Plaintiff had sufficient contact with his parents' household to be considered a resident. Because Plaintiff may be a resident of his parents' household, he may be considered a "household member" under the terms of the GEICO policy and would be among the insured under the policy. (Doc. No. 3-2, Ex. D at 31.) For this reason, Defendant's Motion to Dismiss the breach of contract claim will be denied.

### ii. Plaintiff's Claim May Not Have Been Specifically Excluded

Next, Defendant argues that Plaintiff's breach of contract claim should be dismissed because his underinsured motorist claim is specifically excluded by the terms of the GEICO policy. (Doc. No. 3 at ¶ 58.) Defendant points to an exclusion in the GEICO policy that bars any underinsured motorist claim brought by an insured while occupying an owned vehicle not named

---

[4] This Court may only consider whether Plaintiff had "some consistent, personal contact" with his home based on the facts that he has pled. St. Paul Fire and Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431-32 (3d Cir. 1991).

in the policy. (Id. at ¶ 59.) Defendant contends that Plaintiff owned the motorcycle—which was not insured under the GEICO policy—that he was operating at the time of the accident. (Id. at 8.) However, Plaintiff denies that he owned the motorcycle. (Doc. No. 5 at ¶ 60.) The disagreement between the parties as to this material fact means that the ownership of the motorcycle cannot be determined in favor of Defendant at the motion to dismiss stage of the litigation.

"Pennsylvania follows the plain meaning rule of contract interpretation, such that '[w]hen a written contract is clear and unambiguous, its meaning must be determined by its contents alone.'" Sloan & Co. v. Liberty Mut. Ins. Co., 653 F.3d 175, 180 (3d Cir. 2011) (quoting Steuart v. McChesney, 444 A.2d 659, 661 (Pa. 1982)). When ambiguous language is present, it is interpreted in favor of the insured and against the insurer. Mark I Restoration SVC v. Assurance Co. of America, 248 F. Supp. 2d 397, 402 (E.D. Pa. 2003) (citing Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999)). Courts will not distort the meaning of the contract language or strain to find an ambiguity. Id.

The GEICO insurance policy states an exclusion to underinsured motorist claims in clear and unambiguous terms:

> **EXCLUSIONS**
> **When This Coverage Does Not Apply**
>
> 1. This coverage does not apply to ***bodily injury*** to an ***insured*** if the ***insured*** or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent
>
> 2. This coverage does not apply to ***bodily injury*** while ***occupying*** or from being struck by a vehicle owned or leased by ***you*** or a ***relative*** that is not insured for Underinsured Motorists Coverage under this policy.

(Doc. No. 3-2, Ex. D at 31) (emphasis in original).

9

Plaintiff was operating a motorcycle that was not named as a vehicle insured under the GEICO policy. (Doc. No. 4-1 at ¶ 4.) Defendant argues that this exclusion applies in the present case because Plaintiff owned the motorcycle that he was operating at the time of the accident.[5] (Doc. No. 3 at ¶ 60.)

Viewing the facts in the light most favorable to Plaintiff, this Court cannot conclude that Plaintiff's claim was excluded by this provision of the GEICO policy. Defendant argues that Plaintiff owned the motorcycle that he was operating at the time of the accident and therefore the exclusion in the policy bars his claim. (Doc. No. 3 at ¶¶ 60-65.) Although Plaintiff alleges in the Complaint that he was operating "a" motorcycle, the Complaint does not state who owned the motorcycle. (Doc. No. 4-1 at ¶ 5.) If Plaintiff did not own the motorcycle that he was operating at the time of the accident, the GEICO policy may not have excluded his underinsured motorist claim. The policy contains a variety of exclusions, but Plaintiff's underinsured motorist claim would not have been excluded if, for instance, he borrowed the motorcycle with the permission of a friend. (Doc. No. 3-2, Ex. D at 31.) Because the parties disagree as to the ownership of the motorcycle, and the Court cannot consider documents outside of the Complaint and the GEICO insurance policy, at this stage of the case the issue of ownership cannot be resolved in favor of Defendant. Accepting all facts pled in the Complaint as true, this Court must assume at this stage of the litigation that Plaintiff did not own the motorcycle. Consequently, Defendant's Motion to Dismiss the breach of contract claim will be denied.

---

[5] In support of this argument, Defendant attaches to the Motion to Dismiss a copy of a vehicle registration search and a police report from the accident. Defendant alleges that these documents demonstrate that Plaintiff owned the motorcycle. This Court will not consider these exhibits at the motion to dismiss stage. See, supra n.3.

B.  **Bad Faith Claim**

Plaintiff alleges that Defendant acted in bad faith as defined under 42 Pa. Cons. Stat. Ann. § 8371 through its handling of his underinsured motorist claim. (Doc. No. 4-1 at ¶¶ 32-36.) Plaintiff's allegations of bad faith are numerous, and include that Defendant failed "objectively and fairly to evaluate Plaintiff's claim" and that it failed to "promptly . . . offer payment to Plaintiff." (Id. at ¶ 32.) However, Plaintiff has not stated a plausible bad faith claim because these allegations are not supported by specific facts. Therefore, Defendant's Motion to Dismiss Plaintiff's bad faith claim will be granted.

Under § 8371, a court may award a plaintiff whose insurer has acted in bad faith interest on a claim amount, punitive damages, and attorney's fees.[6] The bad faith standard requires an insured to prove with clear and convincing evidence that "(1) the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." Klinger v. State Farm Mut. Auto Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997) (citing Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). Bad faith claims are fact specific and turn on the conduct of the insurer towards the insured.

---

[6] Section 8371 provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> >
> > (2) Award punitive damages against the insurer.
> >
> > (3) Assess court costs and attorney fees against the insurer.
>
> 42 Pa. Const. Stat. Ann. § 8371.

Dougherty v. Allstate Prop. and Cas. Ins. Co., 185 F. Supp. 3d 585, 598 (E.D. Pa. 2016) (citing Condio v. Erie Ins. Exch., 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006)). A plaintiff must plead specific facts as evidence of bad faith and cannot rely on conclusory statements. See Smith v. State Farm Mut. Auto. Ins. Co., 506 F. App'x 133, 136 (3d Cir. 2012) (affirming the dismissal of an insurance bad faith claim that pled conclusory statements without facts); see also Riedi v. GEICO Cas. Co., No. 16-6139, 2017 WL 1326318, at *3 (E.D. Pa. Apr. 11, 2017) ("There are no facts showing how GEICO lacked a reasonable basis for its decision to not pay [underinsured motorist] benefits. . .the complaint fails to state a plausible bad faith claim."); Atiyeh v. National Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 600 (E.D. Pa. 2010) (holding that "bare-bones" conclusory allegations do not state a plausible claim for bad faith). A plaintiff cannot merely say that an insurer acted unfairly, but instead must describe with specificity what was unfair. Id.

Here, Plaintiff's bad faith claim consists only of conclusory statements. For this reason, it cannot survive the Motion to Dismiss. Although Plaintiff cites § 8371 and pleads various conclusions to show how Defendant acted in bad faith, he fails to plead specific facts about Defendant's conduct. (Doc. No. 4-1 at ¶ 32.) For instance, Plaintiff alleges that Defendant engaged "in dilatory and abusive claims handling," but provides no examples of how Defendant handled Plaintiff's claim. (Id.) Furthermore, although Plaintiff alleges that Defendant delayed the arbitration of his claim, he does not provide the date that he submitted the claim, nor does he include any communications sent to Defendant in an effort to recover on the claim. (Id.) Plaintiff's additional allegations of Defendant's bad faith conduct are similar and provide conclusions of law without factual context. The legal conclusions pled in the Complaint are not facts and therefore are not assumed to be true.

In order to survive a motion to dismiss, a plaintiff must state specific facts to plausibly raise a bad faith claim. See Padilla v. State Farm Mut. Auto Ins. Co., 31 F. Supp. 3d 671, 677 (E.D. Pa. 2014) (holding that a plaintiff plausibly stated a bad faith claim because he pled specific facts about his communication with the insurer). Although Plaintiff alleges that Defendant's conduct was unfair, he merely recites a list of conclusory statements instead of illustrating specific instances where Defendant's conduct indicated bad faith.

The bad faith allegations alleged in this Complaint are similar to the bad faith allegations asserted in Atiyeh, supra, in which the court found to be insufficient the bad faith allegations asserted there. 742 F. Supp. 2d at 599. In Atiyeh, the plaintiff alleged that his insurer acted in bad faith in a variety of ways, including unreasonably denying his claim and failing to conduct a reasonable investigation. Id. The court dismissed the bad faith claim, holding that a pleading of "bare-bones" legal conclusions without facts did not state a plausible bad faith claim. Id. Like the plaintiff in Atiyeh, Plaintiff in the present case has pled legal conclusions without facts. Plaintiff has not pointed to any specific instances that would indicate Defendant's actions were in bad faith. As one instance, the Complaint alleges that Defendant did not promptly offer payment to Plaintiff but does not provide the date on which Plaintiff submitted his claim or the date of claim denial by Defendant. (Doc. No. 4-1 at ¶ 32.) As in Atiyeh, Plaintiff here has not alleged factual statements that would state a plausible claim of bad faith under § 8371. Accordingly, Count II of the Complaint will be dismissed.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. No. 3) will be granted in part and denied in part. Plaintiff's bad faith claim will be dismissed, but his breach of contract claim will not be dismissed. An appropriate Order follows.