IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT W. TONER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GEICO INSURANCE COMPANY | : | No. 17-458 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                               March 20, 2018

## I.     PROCEDURAL HISTORY[1]

This action, alleging breach of an insurance contract, warrants federal jurisdiction. 28 U.S.C. § 1331. Plaintiff Robert W. Toner ("Plaintiff") commenced this action by filing a complaint in the Court of Common Pleas of Montgomery County, Pennsylvania on January 16, 2017. Complaint, Exhibit A. On January 30, 2017, defendant GEICO Insurance Company ("GEICO") removed the action to this court based on diversity jurisdiction. Civil Docket Report, Exhibit B. GEICO moved to dismiss the complaint, arguing that Plaintiff had failed to state a claim upon which relief could be granted. Exhibit B, doc no. 3. GEICO also argued that the insurance policy at issue specifically excludes the coverage sought by Plaintiff. *Id.* On July 6, 2017, the Honorable Joel H. Slomsky entered an Order and Opinion granting in part and denying in part GEICO's motion. Exhibit B, doc. nos. 6 and 7. Specifically, Plaintiff's bad faith claim was dismissed, but the breach of contract claim survived. *Id.*

On July 18, 2017, GEICO filed an Answer with Affirmative Defenses to Plaintiff's Complaint. Answer, Exhibit C. On October 16, 2017, upon consent of the parties, Judge

---

[1] The Procedural History and Statement of Facts, *infra*, are gleaned from the Motion for Summary Judgment of Defendant, GEICO Insurance Company (doc. no. 14) ("Motion") and Plaintiff's Response to Motion for Summary Judgment of Defendant GEICO Insurance Company (doc. no. 15) ("Response"). All referenced exhibits are attached to GEICO's Motion.

Slomsky referred this matter to the undersigned "to conduct all proceedings and order the entry of final judgment." Exhibit B, doc. no. 11. On November 2, 2017, this court entered an order bifurcating the issue of coverage under the GEICO policy from the issue of Plaintiff's alleged damages, and setting a deadline for the filing of GEICO's motion for summary judgment at issue herein. Exhibit B, doc. no. 13; Order, Exhibit E. Plaintiff responded to the motion, and on February 2, 2018, oral argument was held. The motion is now ripe for decision. As set forth herein, the record establishes that there is no genuine issue as to any material fact related to GEICO's assertion that Plaintiff's claim is specifically excluded by the language of the policy, and the applicable exclusion requires that judgment be entered in GEICO's favor as a matter of law.

## II.    STATEMENT OF FACTS

### A.    Background

Plaintiff's claims arise out of a motor vehicle accident which occurred on March 25, 2015 in Palm Beach County, Florida. Exhibit A. At that time, Plaintiff was operating a motorcycle that was struck by another vehicle. Police Report, Exhibit F. As a result of the accident, Plaintiff submitted a claim for underinsured motorist benefits under a policy of insurance issued by GEICO to his parents, Robert and Diann Toner. Exhibit A. At all relevant times, Plaintiff was not a Named Insured on the policy in question. GEICO Policy, Exhibit D. Although Plaintiff's brother, Kevin M. Toner, was listed as an Additional Driver on the policy, Plaintiff was not. *Id.*

### B.    Coverage Under the Policy

The Automobile Policy Amendment applicable to Underinsured Motorist Coverage provided under the policy at issue provides, in pertinent part:

> **LOSSES WE PAY**
>
> Under this coverage, we will pay damages for ***bodily injury*** caused by an accident which the ***insured*** is legally entitled to recover from the owner or operator of an ***underinsured motor vehicle*** arising out of the ownership, maintenance or use of that motor vehicle.

Exhibit D, at 30 (emphasis in original).

The Amendment expressly defines relevant terms:

> 2. ***Insured*** means:
>    (a) ***You***;
>    (b) A ***household member***;
>    (c) Any other person while ***occupying*** an ***owned auto***;
>    (d) Any person who is entitled to recover damages because of ***bodily injury*** sustained by an ***insured*** under (a), (b) and (c) above.

*Id.* (emphasis in original).

The policy defines "you" as "the policyholder named in the declarations and his or her spouse if a resident of the same household." *Id.*, at 5. As noted, Plaintiff was not named as a policyholder on the declarations sheet of the policy. *Id.*, at 1. He is not the spouse of either of the policyholders named on the declarations sheet, who are his parents. Therefore, it is undisputed that Plaintiff does not qualify as an insured on the policy as "you."

The policy defines "owned auto" as follows:

> (a) a vehicle described in the policy for which a premium is shown for these coverages;
> (b) a ***trailer*** owned by ***you***;
> (c) a ***private passenger***, ***farm*** or ***utility auto*** which you acquire ownership of during the policy period or for which ***you*** enter into a lease for a term of six months or more during the policy period if,
>    (i) it replaces an ***owned auto*** as defined in (a) above; or
>    (ii) we insure all ***private passenger***, ***farm*** and ***utility autos*** owned or leased by ***you*** on the date of the acquisition, and ***you*** ask us to add it to the policy no more than 30 days later;
> (d) a ***temporary substitute auto***.

3

Exhibit D, at 5 (emphasis in original). The motorcycle that Plaintiff was operating at the time of the accident was not listed as a vehicle to which the policy applies, *see* Exhibit D, at 1, and cannot otherwise be considered an "owned auto" as that term is defined in the policy. Therefore, Plaintiff does not qualify as an insured under the policy by virtue of having occupied an "owned auto" at the time of the accident.

The Amendment defines "household member" as follows:

> 1. ***Household Member*** means a person residing in ***your*** household who is:
> (a) ***Your*** spouse; or
> (b) A ***relative***; or
> (c) A minor in ***your*** custody or the custody of a ***relative***.

Exhibit D, at 30 (emphasis in original). Thus, the parties agree that, in order to qualify as an insured household member under the policy, Plaintiff must establish that he was residing at his parents' home in Huntington Valley, Pennsylvania at the time of the accident.

### C. Facts Pertaining to Plaintiff's Residence at the Time of the Accident

At the time of the accident, Plaintiff was twenty-eight (28) years old. He had struggled with addiction to heroin throughout his adult life. Statement Under Oath of Robert W. Toner, Exhibit G, at 9. In 2011, he went to Florida to seek inpatient treatment for his addiction. *Id.* at 12. During Plaintiff's thirteen (13) months in treatment, he asserts he travelled to Pennsylvania on several occasions. Plaintiff's Response, at ¶ 50. In 2013, Plaintiff, who had resumed living with his parents in Pennsylvania, relapsed and returned to Florida for further treatment. Exhibit G, at 26. After spending approximately thirty (30) days in an inpatient rehabilitation facility, Plaintiff moved into a halfway house located at 6004 Lake Avenue, West Palm Beach, Florida,

4

in November, 2013, seventeen months prior to the accident. *Id.* at 14. Plaintiff lived at the 6004 Lake Avenue address for the next eight (8) to twelve (12) months. *Id.*

Under oath, Plaintiff testified as follows:

> Q: - - when did you move I there?
> A: Like I said, the first treatment was in 2011. I moved back up here for a few months, I relapsed and then went back down for treatment again.
> Q: And when was that:
> A: That was in 2013.
> Q: Okay.
> A: October 2013.
> Q: And where did you go that time?
> A: Archstone as well - -
> Q: Same one?
> A: -- for rehab. Yes.
> Q: Okay. And that was 30 days again?
> A: Correct.
> Q: And then where did you go after that?
> A: To the halfway house that is listed as 6004 Lake.
> Q: Okay. And when did you go there?
> A: November of 2013.
> Q: Okay. And how long did you live in that halfway house?
> A: Eight (8) to twelve months.

Exhibit G, at 13-14.

Plaintiff further testified:

> Q: Where did you move from there [the halfway house]?
> A: I stayed at my buddy's house, and jump back and forth between my buddy's house and my girlfriend's house.
> Q: And where does your girlfriend live?
> A: She lives in Boynton Beach.
> Q: Is that the address that's on the medical bills?
> A: Yes.
> Q: 3212 Mahogany Drive, Boynton Beach, Florida?
> A: Correct.
> Q: How long did you live with your girlfriend?
> A: I lived with her periodically, for six months. Between her and my friend's house.

Exhibit G, at 15.

5

While in Florida, Plaintiff obtained a Florida driver's license that identified 6004 Lake Avenue in West Palm Beach as his address. Driver's License Search Results, Exhibit H. Plaintiff notes that his Pennsylvania driver's license expired while he was in Florida, and his attempts to renew it remotely failed. Plaintiff's Response, ¶ 58. In order to obtain a Florida driver's license, he was forced to surrender his Pennsylvania license. *Id.* Thereafter, Plaintiff purchased a motorcycle and registered it in his name at the 6004 Lake Avenue address. Vehicle Registration, Exhibit J. Plaintiff obtained employment at a West Palm Beach construction company. Exhibit G, at 16. He obtained health insurance through his employer, and listed both the halfway house and his girlfriend's home as his address. *Id.*, at 24.

At the time of the accident, Plaintiff was living at his girlfriend's house. Exhibit G, at 25. He so testified under oath:

> Q: Okay. Where were you living when this accident occurred?
> A: I was living at my girlfriend's house.
> Q; And that's the Mahogany?
> A: Correct.
> Q: And how long have you been living there?
> A: I've been living with her - - between her and my friend, on and off, for six months to eight months.

Exhibit G, at 25. Plaintiff had not resided in his parents' home for well over a year when the accident occurred:

> Q: When was the last time prior to this accident, you lived with your parents?
> A: I lived with them for - - prior to the accident?
> Q: Yes.
> A: Roughly a year and a half ago, before I was in treatment.

Exhibit G, at 25-26. Plaintiff's father corroborated this testimony:

> Q: Was Robert living with you when this accident occurred?
> A: No.
> Q: When was the last time Robert had lived with you, when this accident - - before this accident occurred?

6

| | A: | He was up at Christmastime. |
|---|---|---|
| | Q: | To visit? |
| | A: | Yes. |
| | Q: | Okay. When was the last time he lived with you as a full-time resident of your household? |
| | A: | It was probably about a year and a half prior to the accident. |

Statement Under Oath of Robert T. Toner, Exhibit L, at 25-26.

Plaintiff's father furhter testified that Plaintiff's room in the family home remained untouched, and that Plaintiff always returned home after completing rehabilitation. Exhibit L, at 29-30, 31. Moreover, during his statement under oath, Plaintiff testified that he considered Pennsylvania to be his "home residency" while he was living in the Florida halfway house. Exhibit G, at 20. Additionally, Plaintiff stated that it was his intention to remain in Pennsylvania until he recovered from the accident. *Id.* at 33.

### D. Relevant Exclusions Under the Policy and Related Facts

The Automobile Policy Amendment applicable to Underinsured Motorists Coverage under the policy provides, in pertinent part:

> **EXCLUSIONS**
> **When this Coverage Does Not Apply**
> 2. This coverage does not apply to ***bodily injury*** while ***occupying*** or from being struck by a vehicle owned or leased by ***you*** or a ***relative*** that is not insured for Underinsured Motorists Coverage under this policy.

Exhibit D, at 31 (emphasis in original). It is undisputed that, at the time of the accident, Plaintiff was operating a motorcycle. The policy does not list any motorcycle as an insured vehicle on the declarations sheet. Exhibit D, at 1. GEICO contends that Plaintiff owned the motorcycle. Motion, at ¶ 84. Plaintiff responds:

> 84. Denied. The Plaintiff was not the owner of the motorcycle in question, **he had a bi-weekly lease on said motorcycle** – he was not the owner, rather **he leased the vehicle** – he did not own

7

> any vehicle. Moreover, there is no evidence before the Court to support or prove that he in fact was the owner of the motorcycle or any other vehicle at the time of the accident.

Response, at ¶ 84 (emphasis added).

## III. DISCUSSION

### A. Standard of Review Governing a Motion for Summary Judgment

Federal Rule of Civil Procedure 56 provides, in pertinent part:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court shall state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (2017).

Thus, summary judgment is appropriate where there is not genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* "The mere existence" of some disputed fact is not sufficient to overcome summary judgment. *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (citaitons omitted). Rather, the dispute must be genuine and the facts in question material. A dispute is genuine when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is material when proof of its existence or non-existence may affect the outcome of the litigation. *Id.* The court will view all facts in the light most favorable to the non-moving party. *Pignataro v. Port Auth. of N.Y. and N.J.*, 593 F.3d 265, 268 (3d Cir. 2010). The non-moving party, however, will be required to "set forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 250.

### B. Coverage is Excluded Under the Policy

GEICO argues that, even if it is determined that Plaintiff was a resident of his parents' home at the time of the accident, and, therefore, entitled to coverage under the policy, his claim for underinsured motorist benefits was properly denied, because the circumstances of the accident triggered the application of an exclusion. GEICO Brief at 13-14. Specifically, GEICO argues that coverage is excluded because Plaintiff was operating a motor vehicle that he owned and that was not covered under the GEICO policy. *Id.* Plaintiff counters that there is a genuine issue of fact as to who owned the motorcycle, precluding summary judgment. Plaintiff's Brief, at 8-9.

The motorcycle is not identified on the Declaration Sheet. The coverage exclusion expressly applies where the uninsured motor vehicle in question was owned *or leased* by the claimant. Plaintiff has admitted under oath that he leased the motorcycle, Response, at ¶ 84; hence, the exclusion applies and Plaintiff is not entitled to coverage. The facts are straightforward and undisputed. Accordingly, the exclusion applies and GEICO is not required to provide coverage. GEICO is, by contract terms, entitled to judgment as a matter of law on Plaintiff's breach of contract claim.[2]

---

[2] Inasmuch as the uninsured vehicle exclusion applies, it would be futile to determine Plaintiff's place of residency at the time of the accident.

## IV. CONCLUSION

For the foregoing reasons, GEICO's motion for summary judgment (doc. no. 14) is granted. Judgment will be entered in favor of GEICO on Plaintiff's breach of contract claim. An appropriate Order is attached.

BY THE COURT:

/s/ Carol Sandra Moore Wells
CAROL SANDRA MOORE WELLS
United States Magistrate Judge